UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Civil Action No. 2:00-CV-02923 |
| Plaintiff | Judge MA/A |
| v. | |
| AUTOZONE, INC. | |
| Defendant. | |

## DEFENDANT'S POST TRIAL MEMORANDUM

Defendant AutoZone, Inc. ("AutoZone") submits this Post Trial Memorandum in support of its position that Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") has failed to establish its claim against AutoZone of discriminatory failure to hire Shelly Sheets and Annette Thomas-Dickens because of their sex. AutoZone is also submitting Proposed Findings of Fact and Conclusions of Law addressing the specific facts established at trial and appropriate legal authorities which support a ruling by the Court in favor of AutoZone. In this Post Trial Memorandum, AutoZone presents an overview of the case and a more compact view of the facts and the law.

### The Context of the Claims

It is important to consider the context in which the claims tried to the Court arose. The time frame in question is late 1994 – early 1995, some 14 years ago. While both Ms. Sheets and Ms. Thomas responded to AutoZone's ad for security guard applicants in that time frame, neither of these individuals complained about their not being hired, by EEOC charge or otherwise, or, in fact, even inquired to AutoZone about their applications. The matter would have been a

forgotten event in history had not the Commission contacted these parties years later and raised the specter that they may have been discriminated against. So here we are, 14 years later, with AutoZone having to defend its decision to not interview and consequently to not hire these two individuals whose applications came along with some 148 others during the 90 day time frame at issue. Some people have problems remembering what they did last week, much less having to remember decisions made and actions taken 14 years ago.

## The Decision Makers

It is also important to consider the two individuals who made the decisions on who to interview and recommend for hiring in 1994/1995. They were William Poynter and Shirley Branum. Mr. Poynter has an undergraduate degree and an MBA, and he had been recruiting for AutoZone for three years for its stores before becoming the corporate recruiter. Mr. Poynter, who still works in the recruiting area, testified about the methods used and the practices he followed when he was at AutoZone. These practices were to recruit, evaluate, and recommend for hire individuals on a nondiscriminatory basis. He was taught this when he first took on the job of recruiter at AutoZone and underwent the Interview Skills Workshop. He applied these principles during the time he recruited for the Store Support Center, starting in October 1994. Likewise, Shirley Branum, a long term employee of AutoZone and its predecessor companies, underwent the same type of training and testified that she was committed to the same principles of nondiscrimination.

## What Were The Qualifications Used?

The Commission attacks the methods followed by Mr. Poynter and Ms. Branum because they did not have written job descriptions for security guards, and did not have in writing some 14 years after the fact the qualifications and criteria they were directed to use by the director of

corporate security, Andy Willis. AutoZone is aware of no legal requirement that job descriptions or job qualifications be reduced to writing. Rather, the issue relates to matters of proof – did the company rely on the criteria its managers claimed to have used? Naturally, if the criteria were available in writing this would strengthen the proof that the criteria were used. In the present case, the proof is in the pudding. That is, the qualifications identified by Mr. Poynter and Ms. Branum for security guard positions are the very qualifications held by the individuals they hired. The Commission elicited no evidence to the contrary. Obviously, not every candidate that was hired had every qualification, and some qualifications were more important than other qualifications. As they testified, Mr. Poynter and Ms. Branum looked for individuals who best satisfied the qualifications. It is clear, moreover, that the hiring they were doing was a moving target with applications and resumes coming in on an ongoing basis. When they saw someone who looked like a viable candidate, they attempted to call that person to schedule an interview. In a number of cases they were not able to reach the person and they would move on to another application or resume. They may or may not have gotten back to the one they could not reach. This, of course, could mean that someone with better qualifications who did not answer the phone did not get an interview, whereas someone with fewer qualifications who did answer did. The evidence shows, however, that in the overwhelming majority of the cases, the individuals hired had superior qualifications, and everyone hired fit within the framework of the qualifications identified by Mr. Poynter and Ms. Branum.

## EEOC Challenges To The Criteria Used by AutoZone

The Commission also challenges some of the criteria that were used by AutoZone in hiring for security guards. There is no evidence that the criteria were selected for discriminatory reasons. While the Commission may disagree with the wisdom of AutoZone's choice of some of

these criteria over others, absent some showing of discrimination, the Commission can not substitute its own business judgment for that of AutoZone. *Cline v. Bwxt Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008); *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).

### *Prima Facie* Case

AutoZone does not question that the Commission established a *prima facie* case within the framework of *McDonald-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as to both Ms. Sheets and Ms. Dickens. That is, they can show that they were members of a minority, that they were qualified for the position they were seeking, albeit minimally qualified, but despite their qualifications they were rejected, and that after their rejection, the position remained open and AutoZone sought applicants from persons of their qualifications.

### Pretext

Once the plaintiff establishes a *prima facie* case of failure to hire, and the defendant puts for a legitimate, non-discriminatory reason for its action, the plaintiff must then prove that the reason was pretextual and that sex was the reason for the actions taken. *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 244 (6th Cir. 2004); *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006). Plaintiff can establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003); *Amini v. Oberlin College*, 440 F.3d 350, 360 (6th Cir. 2006). However, the ultimate burden of persuading the fact finder that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Gragg v. Somerset Technical College*, 373

F.3d 763, 768 (5th Cir. 2004), see also *St. Mary's Honor Center v. Hicks*, 509 US 502, 507-508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

<u>AutoZone's Legitimate, Non-Discriminatory Reasons
For Not Hiring the Claimants</u>

AutoZone's reasons for not hiring the claimants are that it hired better qualified males for the position of security guard and that, under the circumstances surrounding the selection process, any failure to select Ms. Sheets or Ms. Dickens for interviews was not based upon sex. Based on availability and responses to calls, numerous applicants with arguably better qualifications than those hired were not selected for interviews. Sex had nothing to do with the process. In every case, Mr. Poynter and Ms. Branum explained why those individuals were hired and the qualifications on which they based their decisions.[1]

<u>The Males Not Hired</u>

The *bona fides* of AutoZone's position is established as much by those that AutoZone did **not** hire as by those that it did. Many of the males that were not interviewed arguably had superior qualifications to some of the males that were hired. This was a product of the hiring process – a tremendous number of applications coming in over a period of time with individuals having varying levels of qualifications and the two recruiters contacting individuals on an ongoing basis. Mr. Poynter and Ms. Branum did not have the luxury of gathering all of the applications and resumes at one time and then sorting through them one by one and ranking them in the order of their qualifications. Had they done this, there is no doubt that Ms. Sheets and Ms. Dickens would have been ranked toward the bottom. The nondiscriminatory nature of the hiring process is also illustrated by others among the male candidates who were not interviewed or hired – individuals who, like Ms. Sheets and Ms. Dickens, had experience primarily in the area

---

[1] In many cases, these reasons were documented in the Daily Interview Log.

of corrections officers and jailers. Nine of the male applicants with such similar background and experience were not interviewed, much less not hired.

### Dickens' Missing Information

The Commission complains that AutoZone did not properly consider the application of Ms. Dickens since she did have private security experience in addition to her jailer experience. Ms. Dickens never listed any of that experience on her application and the Commission can not be heard to complain that AutoZone improperly failed to consider that experience under the circumstances. "Employers have no duty to determine whether an applicant has more qualifications than his resume indicates." *Cline v. Bwxt Y-12, LLC*, at 510. In fact, where, as here, an applicant leaves his or her qualifications off of her resume or application, that person has only herself to blame. *Id.* at 510.

### Cherry Picking

In fact, the Commission engages in cherry picking in its efforts to establish that the two claimants were better qualified than the males. As noted above, and as the testimony made clear, AutoZone did not require every applicant selected for interview to have every qualification, but was looking for those applicants that best satisfied the qualifications it was seeking. The fact that a particular male applicant may have lacked a qualification which one of the claimants had does not establish or suggest discrimination, where, as here, the applicants selected had other qualifications which the claimants did not have. *Cline* at 510.

### The Newspaper Ad

The Commission argues in effect that AutoZone's qualifications were pretextual because all of the qualifications were not listed in the ad run in the Memphis Commercial Appeal. The ad itself was drafted in very broad terms in order to bring in as large a group of applicants as

possible. The ad did not purport to list all of the qualifications the company was considering. The fact that it did not list all of those qualifications is not evidence of discrimination. *See Browning v. Dept. of the Army*, at 696-697; *Cline v. v. Bwxt Y-12, LLC*, at 510.

### References

The evidence reflected that some of the males hired were hired because of a recommendation from or reference by another employee, friend or a relative that worked for AutoZone. The fact that a hiring decision may have been based on personal or family connections does not make the decision illegal. *Amini v. Oberlin College*, at 360.

### Honest Explanation

The basic issue here is whether AutoZone gave an honest explanation for its actions in the hiring of the males and its failure to interview or hire the two claimants. *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004). "[T]he law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality." *Pruitt v. First American National Bank*, 187 F.3d 637, 640-41 (6th Cir. 1999). This is especially true under the present circumstances where the Commission has dredged up employment decisions made some 14 years ago and accused AutoZone of discriminating in the making of those decisions.

### Back Pay

The only damages sought by the Commission in this matter are back pay for the two claimants. The Sixth Circuit has held that a plaintiff in an action under Title VII has a duty to mitigate damages and may not remain unemployed and collect a windfall. *Suggs v. Service Master Educational Food Management*, 72 F.3d 1228 (6th Cir. 1996); *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989). In *Suggs*, after being discharged, the plaintiff immediately secured

1157551.1/006839.000002

alternative employment and continued to work up to the time of trial. The Court found that she had mitigated her damages. In the present case, Ms. Dickens was seeking part time work at AutoZone to supplement her income from her corrections officer position. After she submitted an application to AutoZone, she made no effort to find other part time work for over six months. When she finally decided to apply for another job, she found a job with Wackenhut Corporation on her first try. It is clear, therefore, that she made no reasonable effort to find other work to mitigate her damages, and she should not be entitled to any back pay should the Court find liability against AutoZone. The same thing applies to Ms. Sheets. Ms. Sheets testified that she was looking for a job in security which is why she submitted the application to AutoZone. However, she made no effort to find other work in security over a two year period except in allegedly responding to ads she found, none of which she could recall. She did not contact any of the security companies in the city by checking them out in the Yellow Pages or otherwise, or by applying at the Shelby County Correctional Center. The testimony was clear that there was ample security work in Memphis during the six month time frame for which back pay is claimed for Ms. Sheets. Ms. Sheets did not make reasonable efforts to find interim work and would be entitled to no back pay. *Booker v. Taylor Milk, Co.*, 64 F.3d 860, 865-866 (3rd Cir. 1995).

The Commission also failed to present credible evidence concerning the back pay claim for both Sheets and Dickens. As to Dickens, the Commission's witness made an allowance for back pay for the month of December 1994, even though her application was submitted on December 28, 1994. The Commission showed no male that was hired between that date and January 1, 1995. Also, the computations made by the Commission's witness failed to take into account the overtime worked by Ms. Dickens over the six month period for which back pay is claimed. Ms. Dickens testified that she worked overtime rather than getting another part time

job during this time frame. Therefore, the overtime earnings would constitute an offset against any back pay claim. In 1994, Ms. Dickens held her job as corrections officer and another position with American Building Maintenance. Her earnings from those two jobs was $27,000. In 1995, she earned $24,500 from her combined work as a corrections officer (with overtime) and with Wackenhut. At most then, her lost earnings would have been $2,500. In Ms. Sheets' case, the Commission's witness allowed for a back pay claim for November 1994, even though her resume was not received until November 30, 1994. Therefore, the calculations for both Ms. Sheets and Ms. Dickens are skewed and should not be accepted as accurate by the Court. Finally, had Sheets been hired by AutoZone, she would have been terminated because of her conviction for assault on February 14, 1995. Under the after acquired evidence doctrine, back pay should end as of February 1995. *McKennon v. Nashville Banner Publishing Company*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). See also, *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150 (6th Cir. 1995) (applying after acquired evidence doctrine in Title VII resume fraud case).

## Conclusion

The Commission has failed to establish that AutoZone discriminated against Shelly Sheets and Annette Thomas-Dickens by failing to hire them as security guards in Memphis in 1994/1995. As such, the Court should enter judgment in favor of AutoZone, dismissing this action with prejudice with the Commission cast to pay all costs.

Respectfully submitted this 3rd day of November, 2008.

/s/ Walter W. Christy
Walter W. Christy, Esq., La. Bar # 04134
Coats | Rose
400 Poydras Street, Suite 1440
New Orleans, Louisiana 70130
Telephone: (504) 299-3073
Facsimile: (504) 299-3071
Email: wchristy@coatsrose.com

And

Tracy E. Kern, Esq.
Jones Walker
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone: (504) 582-8134
Facsimile: (504) 589-8134

And

Jef Feibelman, Esq.
Lisa Krupicke, Esq.
Burch, Porter & Johnson
130 North Court Avenue
Memphis, TN 38103
Telephone: (901) 524-5000
Facsimile: (901) 524-5024

Attorneys for Defendant AutoZone, Inc.

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was served on all counsel of record via the Court's Electronic Filing System.

This 3rd day of November, 2008.

/s/ Walter W. Christy

1157551.1/006839.000002